UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK G. MELLON,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C-06-0638 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR ADDITIONAL PROCEEDINGS**<br><br>**(Docket Nos. 12, 13)** |

       On March 13, 2002, Mark G. Mellon applied for disability insurance benefits and supplemental security income benefits, based on alleged disability under Titles II and XVI of the Social Security Act. Mr. Mellon claimed an inability to work since May 20, 2000, due to osteoarthritis, hip replacement, depression, and a history of alcohol abuse. Mr. Mellon has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Mr. Mellon has moved for summary judgment or, in the alternative, remand for additional proceedings. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including but not limited to the administrative record, and good cause appearing therefor, the Court hereby **DENIES** both motions for summary judgment and **GRANTS** Mr. Mellon's request for a remand for additional proceedings.

# I. BACKGROUND

On March 13, 2002, Mr. Mellon applied for disability insurance and supplemental security income benefits, claiming an inability to work since May 20, 2000, due to osteoarthritis, hip replacement, depression, and a history of alcohol abuse. *See* AR 26, 462. Mr. Mellon's application was denied on February 13, 2003. *See* AR 26, 462. Mr. Mellon asked for reconsideration but was again denied on May 6, 2003. *See* AR 32, 467. Mr. Mellon then sought an administrative hearing before an administrative law judge ("ALJ"). *See* AR 36.

On May 30, 2003, ALJ Helen E. Hesse held that Mr. Mellon was not disabled under the Act. *See* AR 22. Judge Hesse went through the five-step sequential evaluation process for disability required under 20 C.F.R. §§ 404.1520 and 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

Judge Hesse concluded that the first two steps were satisfied in Mr. Mellon's favor because Mr. Mellon had not engaged in substantial gainful activity since his alleged onset date and his physical ailments were severe. *See* AR 18-19. At step three, Judge Hesse concluded that Mr. Mellon's impairments did not meet or equal any of the listed, per se disabling, impairments. *See* AR 19. Judge Hesse then turned to the issue of Mr. Mellon's residual functional capacity ("RFC"). After weighing Mr. Mellon's allegations, the medical records, and the medical opinions in the record, Judge Hesse concluded that Mr. Mellon's alleged symptoms were credible but that the alleged severity of the symptoms was not credible. *See* AR 20-21. Judge Hesse found the medical record as a whole, specifically the assessments of state agency physicians and evidence that Mr.

1  Mellon recovered quickly from his surgeries, warranted a finding that Mr. Mellon retains a RFC to
2  perform sedentary work. *See* AR 21.  At step four, Judge Hesse found Mr. Mellon had past relevant
3  work as a rental collector suited to his current RFC; therefore, Judge Hesse concluded Mr. Mellon
4  was not disabled within the meaning of the Act. *See id.*  Judge Hesse did not make any findings
5  with respect to step five.
6      Mr. Mellon challenges the determination that he is capable of performing sedentary work.
7  Specifically, Mr. Mellon argues Judge Hesse did not properly consider all of the available evidence
8  of record and did not properly consider, and assess the credibility of, Mr. Mellon's subjective
9  complaints and the statements of Mr. Mellon's landlord.

## II.  DISCUSSION

### A.  Legal Standard

The district court may disturb the final decision of the Social Security Administration "only if it is not supported by substantial evidence or if it is based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (internal quotation marks omitted).  The Ninth Circuit has stated that "[s]ubstantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal quotation marks omitted).  It "is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* (internal quotation marks omitted).  Where legal error was committed the decision of an ALJ will not be upset if it is found to be harmless. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

### B.  Consideration of the Medical Record

Mr. Mellon argues Judge Hesse's determination that he has a RFC to perform sedentary work is not supported by substantial evidence because Judge Hesse did not adequately consider certain medical evidence of record regarding the severity of Mr. Mellon's impairment.  Specifically, Mr. Mellon points to various sections of the medical record outlining his chronic arthritic problems, treatment with medications, and difficulty walking, standing, and sitting.

3

First, Mr. Mellon alleges Judge Hesse did not adequately credit the portions of the medical record documenting his diagnosis with degenerative arthritis and his bilateral hip replacements. In her decision, Judge Hesse acknowledged that Mr. Mellon has severe degenerative arthritis and that he had hip replacement surgery for both of his hips. *See* AR 19. These conditions led Judge Hesse to conclude that Mr. Mellon suffers from a severe impairment. There is no indication that Judge Hesse did not fully credit these portions of the medical record.

Second, Mr. Mellon alleges that Judge Hesse did not adequately address Mr. Mellon's use of pain medication. Mr. Mellon points out two relevant portions of the medical evidence. The first portion is a report from a treating pharmacist prescribing Mr. Mellon Oxycontin on July 31, 2002, approximately six months after his left hip replacement on February 4, 2002, and approximately six months before his right hip replacement on February 14, 2002. That note explains that Mr. Mellon "tried numerous pain meds without relief" and that Mr. Mellon should not take pain killers with acetaminophen because he has Hepatitis C. *See* AR 271. The second portion, dated May 28, 2002, reports that Mr. Mellon's left hip was "[d]oing well," but that he was using about three Vicodin per day for pain in his right hip. AR 288.

In her decision, Judge Hesse explicitly acknowledged Mr. Mellon's use of Vicodin for his pain. *See* AR 20 ("[A]ll records indicate that the claimant's pain was controlled by the use of Vicodin."). The medical evidence of record reveals that Mr. Mellon's pain was well controlled after his first surgery. *See* AR 243 (reporting three weeks after first surgery, "Pain Scale: 5"); AR 306 (reporting two months after surgery, "Pain is under control with Vicodin 6 tabs QD."); AR 294 (reporting three months after first surgery, "Pain Scale: 0" and "Pain controlled by celebrex."). That Judge Hesse did not specifically discuss other medications used by Mr. Mellon for his pain is not material. *See Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) ("The Secretary . . . need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'") (emphasis in original).

Third, Mr. Mellon alleges that Judge Hesse did not adequately credit the portions of the medical evidence documenting Mr. Mellon's limitations walking, standing, and sitting. Again, Judge Hesse's decision in fact acknowledged Mr. Mellon's claimed limitations, including Mr.

Mellon's claims that he cannot stand for long with or without assistance and that he cannot sit for long without laying down intermittently. *See* AR 20. Moreover, Judge Hesse discussed medical evidence relevant to these claimed limitations. Judge Hesse noted that after Mr. Mellon's first surgery, he was able to walk three miles and eventually six miles, that he occasionally used a cane, that he worked up to climbing four flights of stairs, and that he was advised he could start swimming. *See* AR 19. The medical evidence of record supports Judge Hesse's findings. *See* AR 237 (reporting on March 13, 2002 that Mr. Mellon was walking three miles a day, used a cane "some," and could begin swimming and biking); AR 306 (reporting on April 16, 2002 that Mr. Mellon was walking six miles a day); AR 281 (reporting on June 14, 2002 that Mr. Mellon could walk "about a block" with a cane and could climb four flights of stairs). Judge Hesse's discussion of Mr. Mellon's post-operative treatment focuses on Mr. Mellon experience of pain and his mobility. It is apparent Judge Hesse understood that these were the critical limitations incident to Mr. Mellon's arthritis and surgeries. The Court finds that Judge Hesse adequately credited the medical evidence documenting Mr. Mellon's limitations walking, standing, and sitting.

Mr. Mellon also takes issue with Judge Hesse's statement that "[t]here is no mention by the claimant of any difficulties." AR 20. Mr. Mellon argues that "[t]his statement . . . is not only completely inconsistent with the totality of the evidence of record, but is simply absurd, given the nature and severity of this Plaintiff's bilateral hip impairments and the voluminous medical records documenting the nature and severity of his limitations." Mr. Mellon takes Judge Hesse's comment out of context. Judge Hesse's statement was made in regard to the course of Mr. Mellon's post-operative treatment, not the nature and severity of Mr. Mellon's impairment.

In sum, the Court rejects Mr. Mellon's argument that Judge Hesse's decision is not supported by substantial evidence. Judge Hesse either specifically considered the evidence cited by Mr. Mellon or considered substantially similar evidence. Moreover, Judge Hesse's findings are supported by the record, including the evidence cited by Mr. Mellon.

C.     <u>Credibility of Claimant's Subjective Pain Complaints</u>

Mr. Mellon argues next that Judge Hesse failed to properly consider his subjective pain complaints, and failed to properly analyze his credibility. "[An ALJ] is not required to believe a

claimant's pain testimony, and the [ALJ] may decide to disregard such testimony entirely whenever the claimant fails to submit objective medical findings establishing a medical impairment that could reasonably be expected to produce the claimed pain." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). Where the claimant does submit objective findings establishing a medical impairment that could reasonably be expected to produce the claimed pain, an ALJ may not discredit the claimant's subjective pain complaints merely due to an absence of evidence corroborating that testimony. *Cotton v. Bowen*, 799 F. 2d at 1407; *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.' General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted).

In the instant case, the objective findings could support Mr. Mellon's allegations of pain. The ALJ did not find affirmative evidence of malingering. Accordingly, the ALJ's discrediting of Mr. Mellon's testimony must be supported by clear and convincing evidence.

Mr. Mellon argues that Judge Hesse did not specify which allegations of pain she found not credible. However, Judge Hesse's decision responds to Mr. Mellon's allegations. *See* AR 20. Directly after acknowledging these allegations, Judge Hesse stated that Mr. Mellon's subjective pain complaints "are not persuasive or credible . . . *to the degree that he alleges an inability to perform all work activity . . . .*" *See id.* (emphasis added). It is clear that the allegations Judge Hesse found not credible are not the assertions of pain generally, but the allegations that the pain was so severe that Mr. Mellon was unable to perform even sedentary work.

Mr. Mellon also contends that Judge Hesse did not properly consider or apply Social Security Ruling 96-7p and that Judge Hesse did not state clear and convincing reasons for rejecting Plaintiff's testimony. Ruling 96-7p lists several factors, also found at 20 C.F.R. 404.1529(c) and 416.929(c), that an ALJ must consider when determining a claimant's credibility.

    1. The individual's daily activities;

6

> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p.

In fact, Judge Hesse relied on the 96-7p factors and the medical evidence of record in finding Mr. Mellon only partially credible. Judge Hesse focused on Mr. Mellon's daily activities and treatment for his hip replacements. *See* AR 19-20. Judge Hesse found that Mr. Mellon's part-time work, active participation in therapy and computer training, considerable walking, independence in daily living activities, and ability to climb four flights of stairs all undercut Mr. Mellon's claim of pain so severe that he is unable to perform sedentary work. *See id.* The specific facts upon which Judge Hesse relied are supported in the record. *See* AR 242 (reporting on March 1, 2002 that Mr Mellon was involved in multiple treatment groups); AR 306 (reporting on April 16, 2002 that Mr. Mellon walked six miles daily); AR 299, 273 (reporting that Mr. Mellon requested permission to enter computer training classes on April 30, 2002, but was expelled from those classes by July 16, 2002); AR 294 (reporting on May 16, 2002 that Mr. Mellon exercised at least three times a week); AR 287 (reporting on May 29, 2002 that Mr. Mellon "remain[ed] active in 12-step meetings and volunteer[ed] at ATP's Project SAVE."); AR 281 (reporting on June 14, 2002 that Mr. Mellon could ambulate about a block, climb four flights of stairs, and independently manage his activities of daily living); AR 365 (reporting on February 18, 2002 that Mr. Mellon had been working part time before his second surgery); AR 394 (reporting on February 21, 2003 that Mr. Mellon agreed to attend three one hour long AA meetings and five one hour and a half long Willingness Group meetings weekly). Mr. Mellon's treatment records do not indicate that he engaged in these activities with any unexpected difficulties.

Moreover, two state agency physicians concluded at separate times that Mr. Mellon's medical records evidenced an ability to perform sedentary work. *See* AR 260 (May 6, 2002 report of David Haaland, M.D.); AR 317 (August 6, 2002 report of Leonard Naiman). State agency physician Leonard Naiman, M.D., concluded that the Mr. Mellon's impairment and the medical records did not support a finding of severity more limiting then what is required to perform sedentary work. *See* AR 323.

Accordingly, Judge Hesse gave specific reasons that provide a clear and convincing justification for finding Mr. Mellon's testimony as to the extent of his pain not credible.

D.  Consideration of Third Party Lay Testimony

Mr. Mellon argues Judge Hesse erred by not addressing the testimony of a third party lay witness in her decision. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). "Disregard of this evidence violates the Secretary's regulation [at 20 C.F.R. § 404.1513(e)(2)] that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In the instant case, Mr. Mellon submitted a "Daily Activities Questionnaire" completed by his landlord, Maria E. Gaytan, which corroborates Mr. Mellon's claim that he is not able to perform even sedentary work. Ms. Gaytan wrote, "Mark can't lift or carry anything, sit or stand for more then 10 minutes without laying down or sleep a night without waking up in pain. He make [sic] noise." AR 108. Ms. Gaytan also provides further insight into Mr. Mellon's daily activities, including testimony that his ability to get around is limited and that she helps with preparing his meals and lifting his groceries. *See* AR 104-105. Ms. Gaytan conceded she did not know how Mr. Mellon spent a typical day because she is at work. AR 103. However, she cooks for him "now and then" and helps him lift and carry his groceries. AR 104.

Although it appears there could have been grounds to discredit this evidence, Judge Hesse did not mention the "Daily Activities Questionnaire" or Ms. Gaytan's testimony in her decision. Judge Hesse provided no comment or reasons for disregarding this evidence, in contravention of *Van Nguyen*, *Sprague*, and *Dodrill*.

In response, the Commissioner cites *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001), in support of the argument that Judge Hesse could discount Ms. Gaytan's testimony because the testimony conflicts with the medical evidence. In *Lewis*, the ALJ expressly discounted the testimony of the claimant's family members and stated the reason for discounting their testimony. *Id.* The ALJ explained, "the documented medical history and findings and prior recorded statements are contrary to the testimony." *Id.* The *Lewis* court concluded that the reason for rejecting the lay testimony offered in the ALJ's decision satisfied the requirement that the ALJ give reasons germane to the witness when discrediting their testimony. *Id.* at 511-12. In the instant case, Judge Hesse did not offer any reason for discounting the testimony of Ms. Gaytan. Thus, the ruling in *Lewis* is not applicable here. Moreover, in *Van Nguyen*, 100 F.3d at 1467, the court held that the mere existence of conflicting medical evidence is not grounds for permitting an ALJ to discount the testimony of a lay witness without comment. The Commissioner cites no authority permitting an ALJ to discount the testimony of a lay witness without stating reasons germane to the witness in the ALJ's decision.[1]

The Commissioner also attacks Ms. Gaytan's personal knowledge of Mr. Mellon's capacities. The Commissioner points out that Ms. Gaytan's answers on the "Daily Activities Questionnaire" indicate she is unsure how Mr. Mellon spends a typical day or when he sleeps, as noted above. Some courts have assumed an ALJ need only comment where the lay witness provides competent eyewitness testimony. *See Dodrill v. Shalala*, 12 F.3d at 919 (those "in a position to observe a claimant's symptoms and daily activities" are competent to testify); *Sprague v. Bowen*, 812 F.2d at 1232. Other courts have recited the rule as well without implying any specific

---

[1] Lay witness testimony making "medical diagnosis" is not considered competent evidence and the ALJ may discount such testimony without giving reasons. *Van Nguyen*, 100 F.3d at 1467 (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). In the instant case, the lay testimony regards observations of Mr. Mellon's functional capacities, not medical diagnosis, so the testimony does not fall under the exception announced in *Van Nguyen*.

requirement. *See Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054-56 (9th Cir. 2006); *Van Nguyen v. Chater*, 100 F.3d at 1467.

There are two problems with the Commissioner's argument. First, the ALJ did not expressly reject Ms. Gaytan's testimony on this basis. Second, there is some, albeit limited, basis for Ms. Gaytan's personal knowledge. Mr. Mellon is a tenant in her home, and she has helped him with his groceries and in preparing meals. *See* AR 103-04. While Ms. Gaytan states that she does not know how Mr. Mellon spends a typical day because she works during the day (*see* AR 103), she has had some opportunity to acquire personal knowledge of Mr. Mellon's limited capacities and subjective pain through observations made while sharing a home with Mr. Mellon and assisting him with chores.

Judge Hesse's failure to consider and comment upon Ms. Gaytan's testimony constituted legal error. If the legal error was harmless, the decision of Judge Hesse may still be affirmed. *See Curry*, 925 F.2d at 1131. However, harmless error cannot be found here. In *Stout v. Commissioner, Social Security Administration*, 454 F.3d at 1054-56, the Ninth Circuit thoroughly discussed the application of harmless error where an ALJ disregards competent lay testimony without comment. After analyzing the Ninth Circuit cases applying harmless error test in other circumstances, the *Stout* court concluded, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* The Ninth Circuit recently reaffirmed this rule in *Robbins v. Social Sec. Admin.*, 2006 WL 3041106 at *4 (9th Cir. Oct. 27, 2006).

The question for the Court therefore is whether fully crediting Ms. Gaytan's testimony, a reasonable ALJ could have reached a disability determination different from that reached by Judge Hesse. The Court concludes that a reasonable ALJ could have reached a different determination. Ms. Gaytan's testimony corroborated Mr. Mellon's testimony that he cannot function without frequent, unscheduled rest. At the ALJ hearing, the vocational expert, Ms. Porter, acknowledged that, if Mr. Mellon had to lay down two or three times during the day on an unscheduled basis, then he could not perform any of the past relevant work or occupations identified. *See* AR 493. If Ms.

Gaytan's testimony were fully credited, and conflicting evidence disregarded, a contrary result could have obtained.[2]

Accordingly, the Court cannot conclude that the failure of Judge Hesse to address the lay testimony was harmless error. This is not to say that, on remand, Judge Hesse or another ALJ cannot reject the testimony of Ms. Gaytan. But to do so, the ALJ must provide the reasons therefor.

### III.  CONCLUSION

For the reasons discussed above, the Court concludes that Judge Hesse neither erred in her consideration of the medical record nor in her consideration of Mr. Mellon's subjective pain complaints. Nonetheless, Judge Hesse erred in failing to provide any reasons for discounting the testimony of Ms. Gaytan. Accordingly, the case is remanded pursuant to 42 U.S.C.A. § 405(g) so that the ALJ can address the testimony of Ms. Gaytan. *See Stout*, 454 F.3d at 1056-57 (remanding to Commissioner for "further administrative proceedings" where ALJ failed to address competent lay testimony); *Dodrill*, 12 F.3d at 919 (same). The ALJ is free, should she or he wish, to reopen the record and seek additional evidence relevant to the analysis of Mr. Mellon's disability claim. *See, e.g.*, 20 C.F.R. §§ 404.1512, 416.912, 404.1566, 416.966.

This order disposes of Docket Nos. 12 and 13.

IT IS SO ORDERED.

Dated: November 29, 2006

EDWARD M. CHEN
United States Magistrate Judge

---

[2] The Court notes that the state agency physicians did not themselves examine Mr. Mellon and did not state the facts on which they relied to conclude he could perform sedentary work. *See* AR 260, 317.